In the plan this morning is we're going to hear the first case on the calendar, which is Martinez v. Davis Polk, and then take a very brief adjournment and come out and finish the calendar. The first case is going to be heard by myself and Judge Chin and Judge Pooler, who is participating by video. Judge Pooler, can you hear me? Yes, I can. Can you hear me? I can hear you loud and clear. So I understand that counsel are ready on the first matter, and we then are, I believe, ready to proceed. So, Martinez v. Davis Polk. Good morning, judges. My name is Roosevelt Seymour. I'm made pleased to court. I'd first like to address, Your Honors, the issue of Ms. Martinez's prima facie case. As you're aware, the district court ruled that she failed to prove her prima facie case with respect to her discrimination claims, and the judge's rationale was that she did not compare herself to employees who were similarly situated. We believe that was an erroneous ruling, and the reason for that is that there is a case here in the Second Circuit, Abdu Brisan v. Delta Airlines, which states that the prima facie case can be proven in a number of different ways. The essential factor is that the plaintiff has to adduce enough facts which created an inference of discrimination. In this particular case, the district court ruled that since Ms. Martinez's duties and title were unique in the department, she could not establish that she was similarly situated to the comparators that she cited in her amended complaint. Our position is that she created an inference of discrimination by showing that the white comparators were treated more favorably. But if they weren't comparators, excuse me, but if the white employees to which you refer were not actual comparators, what have you accomplished? Well, our position is that there are comparators. They didn't have similar jobs at all. Well, that's precisely the issue that I'm addressing. Abdu Brisan stated that there are more than one ways to demonstrate discrimination. What is the evidence that race was a motivating factor here? Okay, we're relying on two types of evidence. The first evidence goes to the compensation that was paid to the employees. Our evidence, number one, first. Counsel? Yes. The compensation issue below? Yes. Really? Yes. Our contention is that Ms. Martinez was paid less than similarly situated comparators. Did you raise the statistical compensation issue below? Yes, we did, Your Honor. Okay. I couldn't find it. Maybe you could direct me to where it is in the record, but continue. Yes. You just said that you look at the compensation information and that they were similarly situated, but we're back to the question of whether they were actually comparators. Well, they were comparators insofar as they worked in the same department. Our contention is that their level of responsibility is roughly equivalent, and we're citing— She acknowledged in her deposition, I think, that there were differences in terms of their responsibilities and backgrounds, right? That's true, Your Honor. Yeah. But the point that we would like to make is that the quantitative evidence shows that for over eight years, the three Hispanics in the department were restricted to 3% annual salary increases. Those salary increases are theoretically based on their performance evaluations. We submitted evidence— Non-managerial employees, is that correct? Who, Your Honor? The three Hispanic employees you've just alluded to. I don't believe they were, Your Honor. I guess you would have to— Wasn't your client the highest paid non-managerial employee in BDD? The only reason she was the highest paid was because she began in 1996, and the additional salaries that she earned, she had to earn that through overtime. In terms of base salary, she was certainly not the highest paid. It's unfair to require someone to work additional hours and then say, well, you're the highest paid, whereas your base salary compels you. Have you looked at how many hours managerial employees work? Don't they work— Ms. Martinez earned extra income, but that was due to having to work additional hours in overtime. I don't think that should be a factor in saying whether there was discrimination or not. The point I want to make here is that the statistics show that for eight years, Hispanic employees— and I do concede there were only three Hispanic employees in the department, but there's— What else is there to indicate that race was a motivating factor besides the compensation information? On the issue of the compensation or promotional issues? On anything, that race was a motivating factor. What other evidence is there in the record to show that? Other evidence goes to the question of upgrade of non-managerial employees. Now, Ms. Martinez's, of course, position was unique, and her primary responsibility was managerial editing. She was later—her responsibility was later extended to managing the website content and also liaisoning with the content manager, the vendor. Given that, as you say, her position was unique, and your client, I think, admitted in her deposition that for six of the seven managerial positions, she didn't have the qualifications, couldn't perform the duties of those positions, how do you establish that it was race that was the motivating factor for not upgrading the job that she was doing to a managerial position as opposed to a business decision, that this job is not properly designated a managerial position? Well, as far as managerial positions go, there was no clear, distinct line between who is managerial and who is non-managerial. You'll look—you'll find in the record that, for example, you might be hired in an events coordinator, then suddenly the director of the department will suddenly turn you into an events manager. They might hire you as a business development analyst, and at some time in the future, you may become a business development manager. So there was no clear line between managers and non-managers. It was all discretionary. Our argument is that, given the totality of the circumstances, the level of— Counsel? What you're talking about, what there's no clear line, isn't it true that we don't interfere in managerial decisions of a company, business decisions? We're only looking for impermissible of failure to promote, failure to give a raise. And I haven't heard anything that has been impermissible. That's what Judge Chin has been asking you about. Have they ever said, you're on this list because you're Hispanic or you're never going to be a manager because you're Hispanic? There's no such evidence in this case, is there? Well, I don't think there needs to be direct evidence of discrimination, and you're not going to find it in this type of context. In this case, I may humbly say, you have to look at the totality of the circumstances. We submitted a deposition testimony from Arthur Brewer, a former employee. He testified that Ms. Martinez was doing managerial work. She had senior status. She was a Columbia law school—I mean, not law school, Columbia graduates. Yet she was the only one that was not upgraded. I think you have to present that fact for a jury to consider along with other facts. Other facts also include that she took on additional responsibilities in cases where other employees were giving additional responsibilities. They were upgraded. So I think the court has to look at the totality of the circumstances rather than just isolated issues. And here is a lady, as I stated, she was the only— I think there was one other Ivy League graduate in the department. She was interacting with partners in the firm. She was creating the style in terms of their brochures, in terms of their marketing material. Yet they insist that she was doing administrative work. Now, some of the work she was doing was taken from a manager. One of them was the content management as far as the website goes. That particular task was done by, I think, a name, Ms. Goodrick or Diedrich. But when Ms. Martinez took it over, suddenly it became administrative work. Why wasn't it administrative work? When a white employee was doing it. That task was subsequently transferred to another white employee by the name of Mr. Plitsky. Mr. Plitsky became in charge of the content. Why wasn't it administrative work when Mr. Plitsky took it over? But whatever Ms. Martinez seemed to do seems to be designated administrative work. And in this type of context, in a situation where you have one Hispanic employee with credentials similar to her colleagues, but yet she's the only one who did not receive any upgrade. I'll reserve the rest of my time. Good morning, Your Honors. My name is Barry Asin. I'm a partner at the law firm of Epstein, Becker & Green, and we represent the respondent Davis Polk and Wardwell. Let me try to unscramble some of the mischief. Ms. Martinez was employed by Davis Polk for more than 20 years. Although she alleges discrimination and retaliation, these are the facts in the record. She was the highest paid, non-exempt employee in the business development department. The two other Hispanic employees in the department who were also non-exempt were the third and fourth highest paid employees in the business development department. The plaintiff earned over $100,000 a year, plus at least another $20,000 in overtime. She earned more in some years than two of the managers who were white. She does not have any witnesses who support her claims. The two witnesses that she identified who were deposed both testified that they are not aware of any evidence of discrimination or retaliation. And yet, counsel, if I can interrupt. Of course. The salary data is pretty devastating, though, isn't it? Yes, it is. Can you explain why no Hispanic employee ever got more than 3% increase? Well, I'm not. The record does not reflect that no Hispanic employee got more than 3%. Ms. Martinez, in certain years, got 25% increase. Another year, she got 11% increase. Another year, 6%. Another year, 5%. Another year, 4%. The Hispanic employees in certain years got more than 3%. So there was no capping of salary increases. That's just a made-up fact. In fact, Ms. Martinez never would have got up to a $100,000 salary. If her salary was capped at 3% a year, she never would have gotten to $100,000. No way. In any event, Ms. Martinez admits that she does not possess any documents that support her discrimination or retaliation claims. She admitted that at deposition. And she admits that she never heard any Davis Polk employee make any remark that she interpreted as anti-Hispanic. And even her own statistical expert witness said that there is no statistical significant evidence of discrimination. She simply hasn't raised any inference of wrongdoing on the firm's part sufficient to send the case to a jury. And that's why the district court below, in the main, granted summary judgment for Davis Polk. Your Honor, I think you were exactly right. Whether or not . . . This is not the traditional promotion claim. She's alleging that her position should have been upgraded from the non-exempt to the exempt level. Now, Davis Polk, as a matter of business judgment in its discretion, didn't think she had the type of job. That was a managerial type of job. She didn't even supervise any employees. They viewed it as administrative. They viewed it as . . . And she was handsomely compensated for that. But, as this court has repeatedly stated in other cases, it's not the job of the courts to act as super personnel departments and second-guess business decisions unless there's evidence of some sort of discrimination. And there's nothing here that suggests discrimination. When I asked her at her deposition, what makes you believe that you were discriminated against in terms of promotion? All the plaintiff said was, and I quote, she watched others come in and get promoted who were white. That was lock, stock, and barrel of her answer. And that type of speculation on her part is not the stuff of some re-judgment or of pretext. With regard, I'll go quickly. With salary, again, she was the highest paid non-exempt employee in the department. She was paid more in certain years than two managers. It is true that in recent years, her pay raises have been 3% or under from about 2009 to 2015. Am I right about that? In one year, it was under, but that had to do with her performance. Many of the employees, by the way, got 3%. One of the white non-exempt employees got 2% one of those years. It wasn't a case of capping. There were budgets for the entire department, and people were slotted in to something, either 3, 2, 4. It could be 5, which had to be balanced by a 1. But there was no capping, as she alleges. And by the way, that 3% is far more in dollars than some of the white non-exempts, let's say 4%. Because there was one white employee who was earning $50,000 a year. Some were earning it in the 70s. She was up at 100. So her 3% is a lot more than their 3% or even their 4%. Thank you very much. Justine Moore, you have reserved two minutes of rebuttal. Finally, Your Honors, I would just refer the Court to page 6 of the appellant's brief, which sets out a chart which shows dates of employment of the Hispanics and dates of employment of the white comparators. And you'll see Ms. Martinez began in 1996. Douglas Buchanan began after her in 1998. And you'll see what Mr. Buchanan's salary is and what Ms. Martinez's is. He's making over $200,000. That's base. And you will see all of the Hispanics, they're all making under $100,000. That just doesn't happen by accident. We would like to believe there's no discrimination, but I think the Court can take judicial notice that there are plenty of statistics that show Hispanics and some other minorities generally make 80% of what comparable whites do. It happens in subtle ways. And I think a case like this, with this complexity of facts, is better resolved in front of a jury. Thank you. Thank you both for your argument this morning. We will take the matter under advisement. And we will now take a brief recess.